# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| *ex rel.* | ) | |
| | ) | |
| WILLIAM SEAN FRENCH, | ) | |
| | ) | |
| Plaintiff-Relator, | ) | C.A. No. N13C-06-289 PRW CCLD |
| | ) | |
| v. | ) | |
| | ) | |
| CARD COMPLIANT, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: June 5, 2018
Decided: August 29, 2018

## MEMORANDUM OPINION

*Upon Plaintiffs' Daubert Motion to Exclude the Opinions
of Defendants' Expert Jennifer Borden,*
**DENIED**.

*Upon Plaintiffs' Daubert Motion to Exclude the Opinions
of Defendants' Expert James Ryan,*
**DENIED**.

*Upon Defendants' Motion to Exclude or Limit Testimony
of Plaintiffs' Expert Brian Duffy,*
**DENIED** in part, **GRANTED** in part.

Thomas E. Brown, Esquire, Edward K. Black, Esquire (argued), Stephen G. MacDonald, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware, Attorneys for the State of Delaware.

Stuart M. Grant, Esquire, Mary S. Thomas, Esquire (argued), Laina M. Herbert, Esquire, Vivek Upadhya, Esquire, Grant & Eisenhofer P.A., Wilmington, Delaware, Attorneys for Plaintiff-Relator William Sean French.

Kenneth J. Nachbar, Esquire, Michael Houghton, Esquire, Matthew R. Clark, Esquire, Barnaby Grzaslewicz, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, Ethan D. Millar, Esquire, Of Counsel (*pro hac vice*), J. Andrew Howard, Esquire, Of Counsel (*pro hac vice*), Alston & Bird LLP, Los Angeles, CA, William R. Mitchelson, Jr., Esquire, Of Counsel (*pro hac vice*)(argued), Jason D. Popp, Esquire, Of Counsel (*pro hac vice*), Alston & Bird LLP, Atlanta, GA, Attorneys for Defendants Apple American Group LLC, CBC Restaurant Corp., Il Fornaio (America) Corporation, Noodles & Company, and Shutterfly, Inc.

Stephen E. Jenkins, Esquire, Catherine A. Gaul, Esquire, Ashby & Geddes, Wilmington, Delaware, Richard M. Zuckerman, Esquire, Of Counsel (*pro hac vice*)(argued), Sean Cenawood, Esquire, Of Counsel (*pro hac vice*), Kiran Patel, Esquire, Of Counsel (*pro hac vice*), Catharine Luo, Esquire, Of Counsel (*pro hac vice*), Dentons US LLP, New York, NY, Attorneys for Defendants Card Compliant, LLC, Cardfact I, Inc., Cardfact II, Inc., Cardfact III, Inc., Cardfact IV, Inc., Cardfact V, Inc., Cardfact VI, Inc., Cardfact VII, Inc., Cardfact VIII, Inc., Cardfact IX, Inc., Cardfact X, Inc., Cardfact XI, Inc., Cardfact XII, Inc., Cardfact XIII, Inc., Cardfact XIV, Inc., Cardfact XV, Inc., Cardfact XVI, Inc., Cardfact XVII, Inc., Cardfact XVIII, Inc., Cardfact XIX, Inc., Cardfact XXI, Inc., Cardfact XXVI, Inc., Cardfact XXVII, Inc., Cardfact XXIX, Inc., Cardfact XXX, Inc., Cardfact XXXI, Inc., Cardfact XXXII, Inc., Cardfact XXXIII, Inc., Cardfact XXXIV, Inc., Cardfact XXXV, Inc., Cardfact XXXVI, Inc., Cardfact XXXVII, Inc., CARDCO Holding, Inc., CARDCO CI, Inc., CARDCO CV, Inc., CARDCO CVIII, Inc., CARDCO CXI, Inc., CARDCO CXII, Inc., CARDCO CXV, Inc., CARDCO CXVI, Inc., CARDCO CXVII, Inc., CARDCO CXIX, Inc., CARDCO CXX, Inc., CARDCO CXXI, Inc., CARDCO CXXII, Inc., Darden SV, Inc., as successor by merger to CARDCO CXXIV, Inc., CARDCO CXXV, Inc., CARDCO CXXVI, Inc., CARDCO CXXVII, Inc., CARDCO CXXVIII, Inc., CARDCO CXXXII, Inc., CARDCO CXXXIII, Inc., CARDCO CXXXIV, Inc., CARDCO CCCIII, Inc., CARDCO CCCIV, Inc., CARDCO CCCVI, Inc., CARDCO CX, Inc., and CARDCO DI, Inc.

Colm F. Connolly, Esquire, Jody C. Barillare, Esquire, Morgan, Lewis & Bockius LLP, Wilmington, Delaware, Gregory T. Parks, Esquire, Of Counsel (*pro hac vice*), Ezra D. Church, Esquire, Of Counsel (*pro hac vice*), Courtney McCormick, Esquire, Of Counsel (*pro hac vice*), Morgan Lewis & Bockius LLP, Philadelphia, PA,

Attorneys for Defendants Hanna Anderson, LLC, Nash-Finch Company, Pamida Stores Operating Co., LLC and Shopko Stores Operating Co., LLC.

David S. Eagle, Esquire, Michael W. Yurkewicz, Esquire, Klehr, Harrison Harvey Branzburg LLP, Wilmington, Delaware, Martin I. Einstein, Esquire, Of Counsel (*pro hac vice*), David Swetnam-Burland, Esquire, Of Counsel (*pro hac vice*), Stacy O. Stitham, Esquire, Of Counsel (*pro hac vice*), Brann & Isaacson, Lewiston, ME, Attorneys for Defendant Overstock.com, Inc.

Brian M. Rostocki, Esquire, Benjamin P. Chapple, Esquire, Reed Smith LLP, Wilmington, Delaware, Michael J. Wynne, Esquire, Of Counsel (*pro hac vice*), David A. Rammelt, Esquire, Of Counsel (*pro hac vice*), Reed Smith LLP, Chicago, IL, Attorneys for Defendant Einstein Noah Restaurant Group, Inc.

Brian E. Farnan, Esquire, Farnan LLP, Wilmington, Delaware, Shawn J. Organ, Esquire, Of Counsel (*pro hac vice*), Joshua M. Feasel, Esquire, Of Counsel (*pro hac vice*), Organ Cole LLP, Columbus, OH, Attorneys for Defendant Vacation Properties United Ltd.

**WALLACE, J.**

-3-

## I. INTRODUCTION

This Court discussed the background of this case extensively in an earlier opinion.[1] In summary, Plaintiff–Relator William Sean French and the State of Delaware ("Delaware") bring suit under Delaware's False Claims and Reporting Act, alleging that CardFact, Ltd. ("CardFact"), its successor-in-interest Card Compliant LLC ("Card Compliant"), and several retailer parties entered into a contractual scheme designed to deprive Delaware of millions of dollars in unclaimed gift card balances to which it was lawfully entitled under Delaware's Abandoned and Unclaimed Property Law (the "Escheat Law").

This omnibus opinion addresses three motions seeking to exclude certain expert testimony on the grounds of lack of qualification, reliability, and relevancy.

## II. *DAUBERT* ANALYSIS

Delaware Rule of Evidence 702 governs the admission of expert testimony:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] *State v. Card Compliant, LLC*, 2018 WL 2077349, at *1 (Del. Super. Ct. Apr. 30, 2018).

D.R.E. 702 is substantially similar to Rule 702 of the Federal Rules of Evidence, which is governed by *Daubert v. Merrell Dow Pharmaceaticals, Inc.*,[2] and *Kumho Tire Co., Ltd. v. Carmichael*.[3] The Delaware Supreme Court has expressly adopted the holdings in *Daubert* and *Kumho*.[4]

When its admission is challenged, a trial judge must ensure that expert testimony is both reliable and relevant.[5] Expert testimony is relevant if it assists the fact finder in "understand[ing] the evidence or . . . determin[ing] a fact in issue."[6] Reliable expert testimony is premised on technical or specialized knowledge, which requires the testimony to be grounded in reliable methods and procedures and "supported by appropriate validation—i.e., 'good grounds,' based on what is known."[7]

The trial judge functions as a gatekeeper for relevant and reliable testimony by inquiring, where the testimony is scientific: (1) whether the theory or technique has or can be tested; (2) whether the theory or technique has been subjected to peer

---

[2]     509 U.S. 579 (1993) (addressing scientific testimony).

[3]     526 U.S. 137 (1999) (extending *Daubert*'s holdings to all scientific, technical, and specialized matters).

[4]     *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del. 2006) (citing *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 522 (Del. 1999)).

[5]     *Daubert*, 509 U.S. at 597 (1993).

[6]     *Id.* at 591 (quoting Fed. R. Evid. 702).

[7]     *Id.* at 590.

review and publication; (3) whether the technique has a rate of error and what that rate of error is; and (4) whether the theory or technique has gained a general acceptance within the relevant scientific community.[8] These four factors are not meant to be a "definitive checklist."[9] Instead, a trial judge enjoys broad latitude in determining whether expert testimony is both reliable and relevant.[10] The goal of this inquiry is not "wholesale exclusion" of testimony because it has not been "generally accepted;" rather, "cross examination, presentation of contrary evidence, and careful instruction on the burden of proof" are, more often, the appropriate methods of attacking scientific, technical, or other testimony based on specialized knowledge.[11]

Consistent with *Daubert*, Delaware requires the trial judge to engage a five-step test to determine the admissibility of expert testimony.[12] The trial judge must determine that:

> (1)  the witness is qualified as an expert by knowledge, skill experience, training or education;

---

[8]  *Daubert*, 509 U.S at 592–94.

[9]  *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013) (quoting *Daubert*, 509 U.S. at 593).

[10]  *Cornell Glasgow, LLC v. LaGrange Properties, LLC*, 2012 WL 6840625, at *20 (Del. Super. Ct. Dec. 7, 2012); *see also Kumho*, 526 U.S. at 141–42.

[11]  *Daubert*, 509 U.S. at 596.

[12]  *Bowen*, 906 A.2d at 795.

(2)    the evidence is relevant;

(3)    the expert's opinion is based upon information reasonably relied upon by experts in the particular field;

(4)    the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and

(5)    the expert testimony will not create unfair prejudice or confuse or mislead the jury.[13]

It is the burden of the party seeking to introduce the expert testimony to establish its admissibility by a preponderance of the evidence.[14] But as our Supreme Court has again very recently observed, "[a] strong preference exists" for admitting expert opinions "when they will assist the trier of fact in understanding the relevant facts or the evidence." [15]

At the outset, the Court notes that a rigid application of the *Daubert* factors simply cannot be engaged to determine testimonial reliability in every field of expertise.[16] For example, many scientific, technical, or specialized fields are not subject to peer review and publication. That is why the test of reliability is

---

[13]    *Bowen*, 906 A.2d at 795.

[14]    *Id.*

[15]    *Norman v. All About Women, P.A.*, __ A.3d __, ___, 2018 WL 3980138, at *3 (Del. Aug. 21, 2018).

[16]    *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990 (5th Cir. 1997) (noting "[n]ot every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience").

"flexible," and the trial court has "broad latitude when it decides how to determine reliability."[17]

### III. PLAINTIFFS' *DAUBERT* MOTIONS TO EXCLUDE OR LIMIT EXPERT OPINIONS

### A. Testimony of Jennifer C. Borden

The Defendants offer Jennifer C. Borden as an expert in the area of unclaimed property consulting. Ms. Borden offered numerous opinions on the unclaimed property issues in this case, including a report and deposition testimony, as well as anticipated trial testimony.

Plaintiffs seek to exclude these opinions for the following reasons: (1) Ms. Borden's opinions on the voluntary disclosure agreement ("VDA") program are temporally irrelevant, as the program was enacted after the Retailer Defendants entered into Card Services Agreements ("CSAs"); (2) Ms. Borden's opinions lack sufficient indicia of reliability; (3) Ms. Borden's opinions are premised on inadmissible hearsay; and (4) Ms. Borden's invocation of attorney-client privilege precludes Plaintiffs from testing the conclusions drawn in her testimony.

---

[17]    *Kumho*, 526 U.S. at 141–42.

### 1. Ms. Borden's Qualifications

Ms. Borden is a Massachusetts attorney with twenty-two years of experience in the field of unclaimed property.[18] Ms. Borden served as General Counsel to the Unclaimed Property Fund of the Massachusetts Office of the Treasurer for five years before transitioning to private practice in unclaimed property.[19] The law firm of Ernst & Young, LLP employed Ms. Borden as the Regional Director of its Unclaimed Property Practice for six years, and the law firm of Holland & Knight, LLP later employed Ms. Borden as a partner for five years.[20] Ms. Borden has represented holders in connection with more than one hundred unclaimed property audits and VDAs, forty-five of which were conducted by or on behalf of the State of Delaware.[21]

### 2. Ms. Borden's Opinions are Relevant

The Defendants seek to prove, through Ms. Borden's testimony, that there are no salient differences between the transactions that were the subject of the Delaware audits/VDAs and the transactions at issue in this case.[22] Plaintiffs counter that

---

[18]    Aff. of Jennifer C. Borden, ¶¶ 1–2 (hereinafter "Borden Aff.").

[19]    Borden Aff. ¶ 3.

[20]    *Id.* ¶ 4.

[21]    *Id.* ¶ 7.

[22]    Defs.' Borden Opp. at 2.

Borden's opinions regarding the VDA program are temporally irrelevant, because the program was not adopted until 2012, and did not become active until 2013: and the Retailer Defendants entered into the CSAs between 2005 and 2008, five years before the VDA program was enacted, and therefore could not have relied on the positions held by Delaware in the VDAs.[23]

Defendants contend that while the VDA program became active in 2013, Ms. Borden will opine that Delaware consistently maintained the same position from before 2005 until 2015, "show[ing] that Delaware itself never wavered in its approach and that Delaware itself believed Defendants' interpretation to be reasonable."[24]

Under the Delaware Rules of Evidence, relevant evidence is any evidence having any tendency to make the existence of a fact in question more or less likely to be true.[25] All relevant evidence is admissible, unless it is excluded by another evidentiary rule or statute, and all irrelevant evidence is inadmissible.[26] And the Court must exclude even relevant evidence where its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues

---

[23]    Pls.' Borden Br. at 3.

[24]    Defs.' Borden Opp. at 4.

[25]    D.R.E. 401.

[26]    *See* D.R.E. 402.

or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."[27]

The Court finds that Ms. Borden's opinions are relevant to Delaware's historic posture on unclaimed property issues, given her experience in the area of unclaimed property law and knowledge of prior Delaware audits. Thus, Plaintiffs' motion to preclude Ms. Borden's testimony as to its temporal relevancy is denied.

**3. Ms. Borden's Opinions are Proper Subjects for Expert Opinion**

Plaintiffs next argue that Ms. Borden's opinions regarding an industry perspective of Delaware's position toward unused gift card balances are not proper subjects for expert opinion, as they are not sufficiently grounded in science.[28] Plaintiffs argue that Ms. Borden's failure to perform a scientific survey of the industry, or to define the industry itself, render her opinions insufficiently technical.[29] Further, Plaintiffs argue, Ms. Borden cannot opine on the economic substance and business purpose of Defendants' relationship with CardFact, because the relationship between the companies is fact testimony.[30] Ms. Borden's opinions

---

[27]      D.R.E. 403.

[28]      Pls.' Borden Br. at 4.

[29]      *Id.*

[30]      *Id.* at 5.

on the "industry's" views, Plaintiffs contend, are premised on impermissible hearsay.[31]

Defendants assert that Ms. Borden's opinions are based on specialized knowledge gleaned from her extensive experience in the unclaimed property field, as well as communications with other experts in the field regarding Delaware's position on unclaimed property issues.[32] Defendants contest Plaintiffs' argument that hearsay cannot form a basis for expert testimony.

Delaware case law provides that experts may rely on hearsay while forming their opinions, as long as that hearsay evidence is reasonably relied upon by experts in the field.[33] But, experts are not to serve as a "conduit" for otherwise inadmissible hearsay statements.[34]

---

[31]     *Id.*

[32]     Defs.' Borden Opp. at 5.

[33]     *See Brandt v. Rokeby Realty Co.*, 2005 WL 16543621, at *4 (Del. Super. Ct. May 9, 2005) (finding expert's reliance on inadmissible hearsay evidence is limited by Rule 703's requirement that it also be reasonably relied upon by others in the field).

[34]     *See id.* at *5 ("An expert may not, however, rely on hearsay evidence alone to substantively prove the truth of his statement or opinion. If the expert is merely acting as a mouthpiece or conduit for another's opinions or statements, he cannot be said to be acting in his capacity as an expert in the matter and the hearsay evidence is inadmissible."); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ("The expert may not . . . simply transmit . . . hearsay to the jury"). *See also Gannett Co. v. Kanaga*, 750 A.2d 1174, 1187-89 (Del. 2000) (cautioning against allowing experts to bring in "back-door" hearsay and finding "[i]nadmissible facts that form the basis for an expert's opinion are not simply elements of proof subject to the jury's 'weighing' option").

Ms. Borden's opinions on common practice in the unclaimed property industry are not scientific in nature, but specialized knowledge appropriate for expert testimony.[35] Ms. Borden's reliance on the opinions of other industry professionals in forming her understanding of industry perspective falls within Delaware Rule of Evidence 703's parameters.[36] Plaintiffs fail to show that her reliance on communications with other professionals renders Ms. Borden little more than a mouthpiece.

### 4. Ms. Borden's Opinions are Sufficiently Reliable

Plaintiffs next argue that Ms. Borden failed to consult with anyone who had asked the State how it would apply unclaimed property laws to CardFact, and so Ms. Borden lacks a basis for concluding that her sources were reliable, rendering her own opinions unreliable.[37]

---

[35] *See, e.g., Norman v. All About Women, P.A.,* __ A.3d __, ___, 2018 WL 3980138, at *4 (clarifying what constitutes information or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"and that it is not nearly as cabined a definition as Plaintiffs would argue for here).

[36] D.R.E. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). *See also Conway v. Bayhealth Med. Ctr.,* 2001 WL 337228, at *2 (Del. Super. Ct. Mar. 26, 2001) ("The fact that [the testifying expert] bases his opinion, in part, on hearsay such as asking other doctors what they did recently does not change the admissibility of his opinion. Expert opinions do not have to be based solely on admissible evidence.").

[37] Pls.' Borden Br. at 8.

Given Ms. Borden's extensive experience in the area of unclaimed property, the Court finds her qualified to form an informed opinion on the reliability of the experts with whom she has communicated. Challenges to the factual bases for Ms. Borden's opinions go to their credibility, not their admissibility, and may be explored by Defendants' cross examination at trial.[38]

Plaintiffs also contend that Ms. Borden's practice of referring clients to CardFact and vice versa makes her opinions biased and unreliable.[39] Defendants counter that there is no evidence that Ms. Borden ever referred a client to CardFact, nor was she ever hired on the basis of one of CardFact's referrals.[40] Plaintiffs' arguments go toward weight and credibility of Ms. Borden's evidence, issues best left for cross examination and the presentation of contrary evidence.[41]

---

[38] *Perry v. Berkley,* 996 A.2d 1262, 1271 (Del. 2010) (citing *Porter v. Turner,* 954 A.2d 308, 313 (Del. 2008)) (noting cross-examination rather than exclusion can be the proper method of examining the factual basis of an expert's opinion).

[39] Pls.' Borden Br. at 9.

[40] Defs.' Borden Opp. at 8–9.

[41] *See Greatbatch Ltd. v. AVX Corp.,* 2015 WL 9171042, at *2 (D. Del. Dec. 11, 2015) (holding that, where the opposing party alleged an expert witness had a financial interest in the litigation, "[the witness's] alleged bias may be explored during cross-examination but is not a proper basis for excluding his testimony entirely.").

### 5. Ms. Borden's Invocation of Attorney-Client Privilege Does Not Preclude Her Testimony

Finally, Plaintiffs assert that Ms. Borden's invocation of the attorney-client privilege during discovery prevented them learning the identity of her clients and, therefore, from testing her conclusions.[42] Defendants contest the validity of this assertion, arguing that Ms. Borden was forthright about the identity of her clients but refused to disclose privileged information pertaining to those clients.[43]

Plaintiffs do not challenge the propriety of Ms. Borden's assertion of privilege, but only that it impeded their ability to fully test her opinions. Plaintiffs concede that Ms. Borden identified clients during her expert deposition.[44] To the extent that Ms. Borden asserted privilege regarding some aspects of her relationship with those clients, that, again, goes to the weight and credibility of Ms. Borden's testimony.

Plaintiffs' *Daubert* motion to exclude Ms. Borden's opinions is therefore **DENIED**.

---

[42]      Pls.' Borden Br. at 10.

[43]      Defs.' Borden Opp. at 11.

[44]      Pls.' Borden Br. at 10.

## B. Testimony of James G. Ryan

The Defendants offer James G. Ryan as an expert in the business, financial, and legal aspects of the gift card industry. Plaintiffs seek to exclude Mr. Ryan's opinions on the grounds that they are not the proper subject of expert testimony, are not sufficiently reliable nor grounded in reliable methodology, and are based exclusively on impermissible hearsay.

### 1. Mr. Ryan's Qualifications

Mr. Ryan is an Ohio attorney with over twenty-eight years of experience in the field of unclaimed property.[45] Mr. Ryan works with the law firm of Bailey Cavalieri LLC, where he has represented holders in connection with more than fifty unclaimed property audits and VDAs, more than twenty-five of which were conducted by or on behalf of the State of Delaware.[46] Through those representations, Mr. Ryan has communicated extensively with officers and representatives of the State pertaining to the application of unclaimed property laws to unused gift card balances.[47]

---

[45]  Aff. of James G. Ryan, ¶¶ 1, 3 (hereinafter "Ryan Aff.").

[46]  Ryan Aff. ¶¶ 2–4.

[47]  *Id.* ¶ 5.

## 2. Mr. Ryan's Opinions are Proper Subjects for Expert Testimony

Plaintiffs first dispute that Mr. Ryan's opinions are proper subjects for expert testimony, arguing that his opinions are not sufficiently grounded in science but instead offer merely anecdotal evidence of his conversations with others in an undefined "gift card industry."[48] Defendants counter that Mr. Ryan's testimony is properly grounded in his experience in the area of unclaimed property, and that though his testimony may be based on hearsay, Delaware law permits the use of hearsay to form an expert opinion under these circumstances.[49]

Plaintiffs' arguments must fail, here, for the same reasons they failed in the *Daubert* motion to exclude Ms. Borden's opinions. Mr. Ryan's opinions are based in specialized knowledge suitable for expert testimony; as such, his opinions need not be grounded in "research or [a] study"[50] to merit consideration by the jury.[51] Discussing Federal Rule of Evidence 702 in *Kumho Tire Co., Ltd. v. Carmichael*,[52]

---

[48]    Pls.' Ryan Br. at 3.

[49]    Defs.' Ryan Opp. at 6–7, 9.

[50]    Pls.' Ryan Br. at 3.

[51]    *See Conway*, 2001 WL 337228, at *2 (permitting expert opinion on an industry standard, gleaned solely through conversations with other industry professionals, even though it was not a "'scientific' matter" because it was still a "'specialized' matter which is relevant and helpful to the fact finder.").

[52]    526 U.S. 137 (1999).

an opinion adopted by our Supreme Court,[53] the United States Supreme Court cautioned against a strict application of the *Daubert* factors to experience-based expert testimony.[54] "*Daubert* referred only to 'scientific' knowledge because that was the nature of the expertise there at issue."[55] Mr. Ryan's opinions are sufficiently grounded in the specialized knowledge he gained from extensive work in the field of unclaimed property.[56]

Plaintiffs' hearsay argument is similarly unavailing. Because of the lack of formal guidance from the State regarding Delaware's stance on unused gift card balances, unclaimed property experts relied on each other's experiences to advise clients. This Court has previously held that where sharing such information is industry standard, it is reasonable for an expert to rely on communications from others to form an opinion.[57]

---

[53] *Bowen*, 906 A.2d at 794 ("Though the United States Supreme Court's interpretations of F.R.E. 702 in *Daubert* and *Kumho* are only binding upon federal courts, this Court has expressly adopted their holdings as correct interpretations of D.R.E. 702.").

[54] *Kumho*, 526 U.S. at 138.

[55] *Id.*

[56] *See Norman v. All About Women, P.A.,* __ A.3d __, ___, 2018 WL 3980138, at *4.

[57] *See* n.34, *supra.*

### 3. Mr. Ryan's Opinions are Reliable

Plaintiffs next contest the reliability of Mr. Ryan's opinions, arguing that his failure to ask Delaware its position on unused gift card balances renders his opinions purely speculative.[58] Defendants assert that Delaware bore the obligation of issuing guidance on its position.[59]

As with Ms. Borden, the Court finds that this argument goes to the weight and credibility of Mr. Ryan's testimony, rather than its admissibility.[60] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[61] Mr. Ryan's opinions are rooted in his substantial experience in the field of unclaimed property. Given the dearth of information on Delaware's stance at the time the CSAs were entered into, the Court finds discussion among industry professionals of the acceptable standard a sufficiently reliable basis for expert testimony.

Plaintiffs' *Daubert* motion to exclude Mr. Ryan's opinions is therefore **DENIED**.

---

[58]  Pls.' Ryan Br. at 7–11.

[59]  Defs.' Ryan Opp. at 10.

[60]  *See* n.38, *supra*.

[61]  *Daubert*, 509 U.S. at 596.

## IV. DEFENDANTS' MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF BRIAN DUFFY

### A. Testimony of Brian Duffy

Plaintiffs offer Brian Duffy as an accounting expert whose opinions are intended to elucidate the "economic reality" of CardFact's business arrangement.[62] Defendants move to exclude Mr. Duffy's opinions, arguing that Mr. Duffy lacks sufficient qualifications, opines on proposed accounting entries without evidence that the entries were ever implemented, and expresses opinions that fail to meet the standard for reliability.[63] Defendants further argue that Mr. Duffy should not be permitted to comment on their expert's rebuttal report at trial.[64]

### 1. Mr. Duffy's Qualifications

Mr. Duffy is a Certified Public Accountant who has worked as an accountant and auditor for more than eighteen years.[65] Mr. Duffy has specialized in forensic accounting and litigation support services for the past fourteen years.[66] Currently, Mr. Duffy is employed as a partner in the accounting firm of Friedman LLP.[67]

---

[62] *See* Pls.' Duffy Opp.

[63] Defs.' Duffy Br. at 1–3.

[64] *Id.* at 3.

[65] Duffy Expert Report ¶ 1.

[66] Duffy Expert Report ¶ 1.

[67] *Id.*

Defendants dispute the validity of Mr. Duffy's qualifications, arguing that he lacks unclaimed property experience sufficient to form an opinion.[68] Plaintiffs counter that the application of unclaimed property laws to unused gift balances is not a distinct area of accounting, and that Mr. Duffy's certifications as a CPA and in the field of financial forensics show that he possesses the specialized knowledge necessary to testify as an expert.[69]

"Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness."[70] "[A] CPA generally possesses the 'specialized knowledge' to qualify as a helpful expert witness under the proper circumstances."[71] Mr. Duffy's experience as an auditor of companies with gift card programs equips him with sufficient expertise to testify regarding CardFact's proposed accounting entries.

### 2. Mr. Duffy's Opinions are Relevant

Defendants next argue that Mr. Duffy's opinions lack relevancy, as they are based on *proposed* accounting entries, and Mr. Duffy cites no evidence that the

---

[68] Defs.' Duffy Br. at 6–7.

[69] Pls.' Duffy Opp. at 2, 4.

[70] *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). *See also City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 563, 563 n.17 (11th Cir. 1998).

[71] *De Jager Const., Inc. v. Schleininger*, 938 F. Supp. 446, 449 (W.D. Mich. 1996).

proposals were actually implemented.[72] Plaintiffs contend, essentially, that Defendants misconstrue the purpose of the proposed accounting entries—Mr. Duffy does not opine on the proposals for the purpose of showing that Defendants actually used them in any way, but rather to show that the proposals put Defendants on notice of inconsistencies with the CSAs, thereby undermining Defendants' good faith argument.[73]

Mr. Duffy purports to compare the proposed accounting entries with the actual economic arrangement between CardFact and the Defendants, as determined through discovery in this matter.[74] The disparity between the accounting arrangement in the proposed entries and what was actually used is relevant to the issue of scienter. The fact that the proposed accounting entries were not implemented may be used by Defendants to attack the weight of the evidence at trial. But because Plaintiffs do not assert that Defendants implemented or considered implementing the proposals, merely that the Defendants received and saw the proposals,[75] the Court finds Mr. Duffy's opinions on the proposed accounting entries relevant.

---

[72]  Defs.' Duffy Br. at 8.

[73]  Pls.' Duffy Opp. at 6–7.

[74]  Ex. A to Defs.' Duffy Br. at ¶ 38.

[75]  *Id.* at ¶ 37.

-22-

### 3. Mr. Duffy's Opinions are Reliable

Defendants next contend that Mr. Duffy's opinions are based upon neither information relied upon by experts in the field, nor a reliable methodology.[76] Defendants assert that Mr. Duffy fails to cite to any accepted accounting authority or standard in his opinions, and thus has not relied on any objective standard.[77] Defendants further assert that Mr. Duffy's reliance on "true economic reality" fails to satisfy the *Daubert* factors for establishing reliability.[78] Plaintiffs counter only with the assertion that "true economic reality" is not a technical term, but plain English, and therefore a sufficiently reliable basis for his opinion that the Defendants' actual arrangement with CardFact does not match the proposed accounting entries.[79]

Defendants concede that "[d]uring the relevant time period, there were no [Generally Accepted Accounting Principles ("GAAP")] provisions specific to gift card accounting,"[80] but critique Mr. Duffy's reliance on non-binding accounting guidance (the Statement of Financial Accounting Concepts, distributed by the

---

[76] *See* Defs.' Duffy Br. at 9–13.

[77] *Id.* at 9.

[78] *Id.* at 12.

[79] Pls.' Duffy Opp. at 8–9.

[80] Defs.' Duffy Br. at 9.

Financial Accounting Standards Board ("FASCON")). The Court finds that, in the absence of GAAP provisions on point, Mr. Duffy's reliance on FASCON in conjunction with his specialized knowledge as a CPA render his opinions sufficiently reliable. Defendants' arguments again challenge Mr. Duffy's conclusions and credibility rather than the admissibility of his opinions, and, again, under *Daubert*, such challenges are properly left to cross-examination and the presentation of contrary evidence.[81]

### 4. Mr. Duffy's Opinions on Defendants' SEC Filings Will Not be Excluded

Defendants additionally move to exclude Mr. Duffy's opinions regarding the SEC filings of certain of the Defendants.[82] Defendants argue that Mr. Duffy's opinions are in fact based on a single SEC filing, and therefore it would be inappropriate for Mr. Duffy to offer generalized opinions about the Defendants' SEC disclosures.[83] Defendants further argue that Mr. Duffy's opinion regarding that SEC filing is not based on sound accounting analysis.[84] Plaintiffs argue that Mr. Duffy's opinions are admissible insofar as they pertain to the one Defendant whose filing he

---

[81]    *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) (Court must focus "solely on principles and methodology, not on the conclusions that they generate"); *id.* at 596.

[82]    Defs.' Duffy Br. at 13.

[83]    *Id.* at 14.

[84]    Defs.' Duffy Br. at 14.

reviewed, and that Defendants' arguments go to the weight rather than the admissibility of Mr. Duffy's opinions in this matter.[85]

Mr. Duffy may opine solely on the SEC filings he has reviewed: those of Defendant Overstock.com, Inc ("Overstock"). Defendants may challenge the weight of this evidence during cross examination. Mr. Duffy's opinion here merely asserts a difference between Overstock's SEC disclosures and the arrangement between Overstock and CardFact as illustrated in the CSAs. Again, the Court finds the basis for Mr. Duffy's opinions sufficiently reliable in light of his qualifications.

### 5. Mr. Duffy is Permitted to Opine on the Opinions Expressed in Defendants' Rebuttal Reports

Finally, Defendants argue that Mr. Duffy should be precluded from opining on opinions expressed in the rebuttal reports of certain Defendants' experts on the basis that Mr. Duffy has testified that, having reviewed the rebuttal reports, there was nothing in his own report or testimony that he wished to amend.[86] Plaintiffs argue that Mr. Duffy may attempt to rebut criticism of his report raised by Defendants' experts, and that the schedule did not provide for sur-rebuttal expert reports.[87]

---

[85]     Pls.' Duffy Opp. at 9.

[86]     Defs.' Duffy Br. at 15–16.

[87]     Pls.' Duffy Opp. at 9–10.

"'The scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report[.]'"[88] The opposing experts, therefore, have not raised anything outside the scope of Mr. Duffy's initial report. Mr. Duffy himself has already testified that there is nothing in his report he would change in light of Defendants' experts' opinions.[89] On the present record, it appears no sur-rebuttal is necessary. If there is a request made at trial in this regard, a ruling will be made with the factual record then more fully developed.

Defendants' *Daubert* motion to exclude or limit the expert testimony of Mr. Duffy is hereby **DENIED**, but Mr. Duffy may not provide sur-rebuttal testimony at trial with the matter being heard outside the jury's presence and based on the trial record that has been developed.

    **IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

Original to Prothonotary
cc:    All counsel via File & Serve

---

[88]    *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Allen v. Dairy Farmers of Am., Inc.*, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)).

[89]    *See* Ex. B to Defs.' Duffy Br. at 222-23.