**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STACI DICKERSON )
)
      Plaintiff, )
)
      v. )    C.A. No.: N24C-08-004 SSA
)
STATE FARM MUTUAL )
AUTOMOBILE INSURANCE CO., )
)
      Defendant. )

Submitted: February 27, 2026
Decided: March 4, 2026

The Court must determine whether a treating podiatrist is permitted to testify regarding the reasonableness, cost, and necessity of a spinal cord stimulator where treatment notes indicate Plaintiff was referred to undergo a lumbar MRI and consult an orthopedic spine surgeon to discuss the procedure. The Court has reviewed the parties' arguments, the record, and the law governing this matter. The Court finds the testimony will be limited, in part.

### *Factual Background*

Plaintiff seeks uninsured motorist benefits from Defendant. Factually, she maintains an uninsured motorist ran over her foot and she suffered injury as a result.[1] Defendant disputes the facts underlying the incident, as well as the "nature

---

[1] Pretrial Stipulation, at p. 1.

and extent, and/or causal relationship" of the injuries.[2]  Plaintiff treated with Dr. Jamrok, a podiatrist.  For over a decade, Dr. Jamrok has practiced with Peninsula Orthopaedic Associates.  He is a member of the American Podiatric Medical Association and the American Board of Orthopaedics and Primary Podiatric Medicine.[3]

Dr. Jamrok has not been deposed; however, he authored a two-page report, detailing his treatment of Plaintiff.  He diagnosed Plaintiff with RSD/complex regional pain syndrome 1 and his report details she was treated with physical therapy and medication for pain, inflammation, and "her nerve situation."[4]  Eventually, Dr. Jamrok felt Plaintiff was "no longer significantly improving…"[5]  The record as to Dr. Jamrok's treatment, general qualifications, and qualifications specific to the spinal cord stimulator is limited to his report and CV.  The Court has been provided with portions of Plaintiff's deposition transcript and one additional treatment note from a physician assistant within Dr. Jamrok's practice.

Significant for this decision, Dr. Jamrok's report states he "recommended that the patient visit my partner Dr. McGovern to discuss the DRG spinal cord stimulator which is indicated for RSD/complex regional pain syndrome."[6]  Dr.

---

[2] *Id.* at p. 2.
[3] See Plaintiff's Response in Opposition to Defendant's Daubert Motion to Exclude and/or limit the testimony of Plaintiff's Medical Expert ("Plaintiff's Response"), Exhibit B.
[4] *Id*. at Exhibit A at p. 1.
[5] *Id.* at p. 2.
[6] *Id.*

Jamrok further stated "I believe that the prognosis for the patient with the DRG spinal cord stimulator would be very positive."[7] Thus, it appears the stimulator requires surgery which Dr. Jamrok could not perform. The report of Dr. Jamrok and his expert disclosure does not detail his experience managing patients who have had a spinal cord stimulator.

Dr. Jamrok does not opine as to the cost of the device or its implantation. He concludes his report "the patient is going to need more advanced treatments such as the DRG spinal cord stimulator to completely resolve her RSD/complex regional pain syndrome 1 based on her last visit."[8]

Defendant points, in part, to a medical record from Trevor Abbott, a physician assistant within Dr. Jamrok's practice, that is dated more than six months before Dr. Jamrok's report. Mr. Abbott's note states "[n]ext appointment will be with Dr. McGovern. I have ordered a lumbar MRI[9] and will have the patient follow-up with Dr. McGovern to discuss if she is a candidate for DRG neuromodulation."[10]

Plaintiff testified she met with Dr. McGovern and discussed the spine stimulator. This transcript includes her description of the stimulator— "it was

---

[7] Plaintiff's Response, Exhibit B at p. 2.
[8] *Id.*
[9] It appears X-rays and an MRI of the foot and ankle were completed. *See* Defendant's Daubert Motion to Exclude and/or Limit the Testimony of Plaintiff's Medical Expert, Ex. C p. 2.
[10] Defendant's Daubert Motion to Exclude and/or Limit the Testimony of Plaintiff's Medical Expert, Ex. C.

putting this box in my back with like some wire hanging out of my back with a button that I would push if I had pain."[11]  Plaintiff was not interested in pursuing this option.

### *Parties' Contentions*

Defendant argues Dr. Jamrok's opinions regarding the spinal cord stimulator should be excluded by this Court, under its gatekeeping function, because his opinions are "speculative, unreliable, and exceed the scope of his qualifications as a podiatrist."[12]  Defendants argue testimony on this point "requir[es] specialized spinal and neurosurgical expertise."[13]  To put a finer point on the issue, Defendant argues "[w]hether a patient is a candidate for a DRG spinal cord stimulator—a surgically implanted spinal device—falls well outside the scope of podiatric medicine."[14]

Moreover, Defendant suggests such testimony would be speculative because Plaintiff did not follow-up on recommended diagnostic studies to evaluate for the spinal cord stimulator.  In Defendant's view, whether she is a candidate for the spine stimulator is a decision made by Dr. McGovern.  Therefore, Defendant asks the Court to exclude or limit the testimony of Dr. Jamrok on the subject of the

---

[11] Plaintiff's Response, Ex. C. at p. 23.
[12] Defendant's Daubert Motion to Exclude and/or Limit the Testimony of Plaintiff's Medical Expert at ¶ 2.
[13] *Id.*
[14] *Id*. at ¶ 4.

spine stimulator. Defendant also asked the Court to preclude opinion testimony from Dr. Jamrok regarding the RSD/complex regional pain syndrome 1 diagnosis, but this portion of the motion was withdrawn during oral argument.

Plaintiff disputes these characterizations. Plaintiff points to Dr. Jamrok's CV and argues he has "specialized expertise in foot and ankle pathology." Plaintiff frames the question slightly differently insofar as she advises Dr. Jamrok is not offered to testify as to how to *perform* the implementation but instead will testify she will not improve without it. Plaintiff answers the charge of speculative testimony by pointing to two years of treatment and an MRI. Plaintiff suggests her doctor can testify as to his recommendation for the spine stimulator even if she did not undergo diagnostic testing, which she characterizes as ordered "to finalize surgical placement."[15]

### *Legal Standards*

As the proponent of the expert testimony in this case, Ms. Dickerson bears the burden by a preponderance of the evidence.[16] Ms. Dickerson need not demonstrate her expert is correct, but she must demonstrate he is reliable.[17] This Court "must act as a gatekeeper and determine that the evidence is both (1) reliable and (2)

---

[15] Plaintiff's Response at ¶ 8.

[16] *In re Zantac (Ranitidine) Litigation*, 342 A.3d 1131, 1144 (Del. 2025) *citing Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 795 (Del. 2006).

[17] *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. Ct. 2006) *citing In re Paoli R.R. Yard P.C.B. Litigation*, 35 F.3d 717 (3d Cir. 1994).

relevant."[18] "Ultimately, the testimony of an expert is admitted upon the theory that, in a particular case, the issue is such that the jurors are not competent to draw their own conclusions from the facts without the aid of the expert."[19] In making this determination, the Court looks to D.R.E. 702 and to *Daubert*.[20]

Delaware Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

This Court must be focused on principles and methodology, not the conclusions of the expert—and while the Court's inquiry is guided by factors, they are flexible.[21]

The factors include: [22]

---

[18] *In re Zantac (Ranitidine) Litigation*, 342 A.3d at 1144 *quoting Tumlinson v. Advanced Micro Devices, Inc.*, 106 A.3d 983, 990 (Del. 2013).
[19] *Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826, 846 (Del. Super. Ct. 2000) (citation omitted).
[20] D.R.E. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).
[21] *Daubert*, 509 U.S. at 594.
[22] Most recently in *In re Zantac (Ranitidine) Litigation*, 342 A.3d at 1144 *quoting Daubert*, 509 U.S. at 593–94.

(1) Whether the expert opinion testimony "can be (and has been) tested"

(2) Whether the opinion testimony "has been subjected to peer review and publication"

(3) The "known or potential rate of error" and

(4) Whether it has attracted widespread acceptance within the scientific community.

The Delaware Supreme Court has recently reaffirmed this Court's obligation as a gatekeeper and that this Court should not presume admissibility.[23] As to relevance, the proffered expert testimony must both "relate to an 'issue in the case' and 'assist the trier of fact to understand the evidence or to determine a fact issue.'"[24] "Courts are not just to let the opinion of the credentialed expert into evidence for what it is worth and leave its evaluation to the jury."[25] While the Court should consider the expert's background

> [t]he words of an expert qualified to opine within a recognized "field" do not automatically guarantee reliable, and therefore admissible, testimony, however. The inquiry will be whether the expert and the "field of expertise" itself can produce an opinion that is sufficiently informed, testable and in fact verifiable on an issue to be determined at trial.[26]

---

[23] *Id.* at 1147.
[24] *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013) (internal footnote omitted) *quoting Daubert*, 509 U.S. at 591.
[25] *Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826, 841 (Del. 2000).
[26] *Eskin v. Carden*, 842 A.2d 1222, 1228 (Del. 2004).

In *O'Riley v. Rogers,* the Delaware Supreme Court set parameters for this Court to consider.[27] Specifically, "[a] doctor cannot base his expert medical opinion on speculation or conjecture."[28] Indeed, "a doctor's testimony that a certain thing is possible is no evidence at all."[29] In *O'Riley,* Plaintiff treated with an orthopedic surgeon but did not undergo a recommended diagnostic test to determine the source of the injury due to cost concerns. At trial, on cross-examination, testimony was elicited that, if the diagnostic test were completed, it would enable the doctor to determine if surgery were appropriate.[30] Upon review, it was determined that the proper bounds of expert testimony were exceeded when "counsel asked the doctor to speculate about the possible medical consequences of possible treatment courses an EMG test might reveal."[31]

In *Li v. Geico*, this Court excluded testimony from an expert regarding the potential need for future surgery.[32] In its decision, this Court noted conclusions within the expert's report were phrased in a speculative manner. The Court found the proffered testimony sought to "opine about the possible courses of treatment and costs that might arise if now-unmet conditions are satisfied in the future."[33]

---

[27] 69 A.3d 1007 (Del. 2013).
[28] *Id*. at 1011 *quoting Oxendine v. State*, 527 A.2d 870, 873 (Del. 1987).
[29] *Id.*
[30] *Id.* at 1009.
[31] *Id.* at 1012.
[32] 2019 WL 4928614 at *2 (Del. Super. 2019).
[33] *Id*. at *2.

"An expert may be highly qualified and competent to offer many opinions. But that expert must be competent to offer opinions in a given specific factual setting."[34] This Court has also excluded speculative expert testimony from a doctor couched in terms of the "likely" form of surgery "if" treatment was ineffective and that he was "hopeful" total knee replacement was not required.[35]

## *Analysis*

On the record presented, the mechanics of the DRG spinal cord stimulator surgery is limited to Plaintiff's lay testimony. What a DRG spinal cord stimulator is or does, or which doctor/specialty determines its proper use and/or management is unclear. Further, while Plaintiff argues the diagnostic testing ordered is for the purpose of determining surgical placement as opposed to determining the necessity or reasonableness of surgery—the Court can find no record citation for this proposition.[36]

Plaintiff cites *Pavey v. Kalish* for support.[37] Specifically that it is the Court's duty "not to determine which theory is stronger but instead to act as a gatekeeper who determines whether the testimony is based on sufficient facts or data and on reliable principles and methods that have been reliably applied to this case."[38]

---

[34] *Friedel v. Osunkoya*, 994 A.2d 746, 751 (Del. Super. 2010).
[35] *Jackson v. Aglio*, 2014 WL 1760316 *3 (Del. Super. 2014).
[36] See Plaintiff's Response at ¶ 8.
[37] 3 A.3d 1098 (Del. 2010).
[38] *Id.* at *3.

Here, the Court is not presented with alternate theories; instead, the Court is asked if the testimony is based on sufficient facts or data.

With the legal principles cited above in mind, the Court re-reviews the report of Dr. Jamrok and his expert disclosure. His report indicates he recommended Plaintiff "visit my partner Dr. McGovern *to discuss* the DRG spinal cord stimulator which is *indicated for* RSD/complex regional pain syndrome." Dr. Jamrok notes Plaintiff will need "advanced treatments *such as* the DRG spinal cord stimulator" Additionally, the note from Mr. Abbott indicates he ordered a lumbar MRI and advised Plaintiff follow-up with Dr. McGovern *to discuss if* she is a candidate for DRG neuromodulation." The Court finds this language is line with testimony excluded in both *O'Riley* and *Li* because it is speculative.

Dr. Jamrok can testify as to his diagnosis of RSD/complex regional pain syndrome 1. He can testify regarding his treatment of Plaintiff. He can testify that she has not significantly improved with the course of treatment he prescribed.

However, Dr. Jamrok cannot testify as to the cost of the DRG spinal cord stimulator, as he candidly states he does not have that information. The record does not have sufficient information to evaluate the quality of testimony proposed as it relates to the DRG spinal cord stimulator. Nor does the Court have sufficient information, under a preponderance of the evidence standard, regarding the field of

expertise applicable to evaluating Plaintiff's suitability for the spinal cord stimulator or its management.

Regarding the reasonableness of the DRG spinal cord stimulator, the Court finds the referral to Dr. McGovern, without any clarification of Dr. McGovern's role in the matter, leaves a record that is unclear as to the underlying basis of such reasonableness under Rule 702. It is unknown if Dr. McGovern was identified to simply carry out the procedure after Dr. Jamrok determined it was appropriate, or if Dr. McGovern would be required to independently assess Plaintiff in determining whether she is an appropriate candidate for a DRG spinal cord stimulator. The record reflects an MRI was ordered at the time the referral to Dr. McGovern was made. While Plaintiff asserts the purpose of the MRI was to limited assist with surgical placement and not for diagnostic purposes, the Court cannot make this factual connection in the record. It appears no such MRI has been completed. Therefore, the Court determines it would be impermissibly speculative to permit testimony regarding the spinal cord simulator.

Finally, Dr. Jamrok concludes Plaintiff's prognosis with a spinal cord stimulator is "very positive." However, the underlying support for this conclusion is also unknown. The Court finds this does not meet the standard under 702.

The Defendant's Motion to Exclude and/or Limit Testimony is therefore, GRANTED, in part.

**IT IS SO ORDERED.**

**/s/Sonia Augusthy**
Judge Sonia Augusthy